ISAAC P. CLAPP & another *vs.* ISRAEL HERRICK.

Essex.   Nov. 6, 1878. — Sept. 9, 1880.   ENDICOTT & LORD, JJ., absent

The owner of a mill on a natural stream, who withholds or lets down water in excessive quantities, beyond what is incident to the necessary or reasonable use of his mill, is liable in an action of tort for injuries thereby caused to lands below on the same stream.

In an action against the owner of a mill on a natural stream, for injuries sustained by the owner of lands below on the same stream, evidence of a former judgment in an action by the plaintiff against the grantor of the defendant for a similar injury is admissible; and parol evidence is admissible to show what was in controversy in that action.

In an action against the owner of a mill on a natural stream for injuries sustained by the owner of lands below on the same stream, in consequence of the mill-owner putting in a new wheel, the plaintiff may show what the condition of his land was before the new wheel was put in.

TORT for unlawfully and injuriously holding back and letting down water upon and flowing the plaintiffs' land.   Writ dated February 10, 1875.   Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions in substance as follows:

The plaintiffs offered evidence of their title to the land described in the declaration; and it was admitted that, for three years prior to the date of the writ, the defendant had been in the occupation of a mill-dam and a saw-mill across a stream called Pye Brook, situated above the land of the plaintiffs.   The defendant bought this mill, from the administrator of the estate of William Lowe, by deed dated December 6, 1871.   The plaintiffs offered evidence tending to show that it was an old mill, and, until within twenty years, had never been used between April 15 and October 15 in each year, and also offered in evidence a judgment obtained by one of the plaintiffs against said administrator, by which it appeared that in 1867 Isaac P. Clapp brought an action of tort against William Lowe for injury done to the plaintiff's meadow land by the unlawful discharge of water from the defendant's mill-dam, which it was alleged was unlawfully maintained on July 10, 1867; that, after the death of Lowe, his administrator appeared; and judgment by consent was entered for the plaintiff, which judgment was satisfied.

It was admitted that, in 1867, William Lowe took out of the mill the wheel which had been in use for some time before, and put into the mill the present wheel and gate, and there was evidence on the part of the defendant, the fact not being admitted by the plaintiffs, tending to show that the new wheel used only about one eighth as much water as the former one. Isaac P. Clapp was permitted, against the objection of the defendant, to testify that the action in which the judgment was obtained was brought by him for damage to him after the use of the new wheel, and which was caused by it. The plaintiffs also offered evidence tending to show that the defendant used his mill during 1872, 1873, and 1874, until the middle of July, and in August and September, and claimed to maintain their action on the ground that the defendant had used said mill-stream during the summer months, and also in an unnecessary and unreasonable manner, and thereby overflowed and injured their land. The plaintiffs were also permitted to show the condition of their land in 1865. To the admission of all the foregoing testimony, except that as to the relative use of water by the two wheels, the defendant objected.

The defendant asked the judge to instruct the jury as follows: " 1. In this form of action, the plaintiffs can only recover damages for some abuse by the defendant of a right to use his mill during the season when the damage is alleged to have been done; such as wantonly or unnecessarily letting down water upon the plaintiffs. But it is not of itself wantonness or an abuse of a right to use his mill if the defendant saws, using a reasonable quantity of water therefor when the plaintiffs are getting their hay. 2. Whether or not the defendant has the right to keep up his dam and maintain a head of water during the summer and use his mill, the jury are not to consider. In this action they must assume that he has such right."

The defendant also objected to the submission of the case to the jury, except upon the issue of damage arising from an abuse by the defendant of a right to use his mill at all seasons of the year, contending that for other damages the plaintiffs' remedy was by complaint under the Gen. Sts. *c.* 149.

The judge instructed the jury as follows: " The defendant became on December 6, 1871, owner of land through which a

natural watercourse, called Pye Brook, flowed, and on which was situated a saw-mill. By virtue of his deed the defendant acquired the right, as owner of that land, inseparably connected with and incident to that ownership, at all times of the year, to the natural flow of that watercourse through his land, and its descent, and all the mechanical force which could be derived from it, for any hydraulic purpose to which he might deem fit to apply it.

" The defendant was bound to use such watercourse reasonably as it passed through his land, so as not to injure the equal right which the plaintiffs had to the like reasonable use of the same watercourse. The maintenance of a dam, and the use of water in driving mill-wheels, must necessarily and incidentally damage its steady and constant natural flow, and substitute a different manner of that flow as to the time of holding water up and letting it down. So far as such mode is reasonably incidental to the use of the stream for mill purposes, it is the right of the proprietor, and constitutes in part the mill-privilege which the law gives him; and if such reasonable use interferes with the use of the water which another riparian proprietor might have made of it, the latter has no cause of action on account of such interference.

" The defendant had no right to divert the waters of Pye Brook, so that they could not flow naturally through the plaintiffs' land, or to hold them back for unreasonable lengths of time, or to let them down in unreasonable quantities; but the defendant cannot be held responsible for any injurious consequences which resulted to the plaintiffs, if the defendant used the water in a reasonable manner, and the water used by him was limited by and did not exceed what was reasonably and necessarily required for the operation of his saw-mill, if that mill was adapted and appropriate to the size and capacity of the brook and the quantity of water usually flowing therein. What would be a reasonable use of a watercourse must depend upon all the circumstances of the character of the stream, its capacity, sources of supply, its relative position, the usages of the country in relation to mills on similar streams, and the exigencies of business at his mill. The defendant, having a right to make such reasonable use of Pye Brook at all seasons of the year, was not responsible for

an injury which was the necessary and unavoidable result of his exercise of that right. The use made of Pye Brook by William Lowe, from whom the defendant purchased his mill and mill-site, in connection with that mill and mill-site, would not, however many years exercised, restrict or control the defendant's use of the same, nor would the usage of Lowe and of those from whom he derived his title to that mill and mill-site, for any number of years, to use the same in winter only and never during the summer months, authorize the finding that there was a lost record of proceedings under the mill acts, which in law restricted Lowe, and the defendant as his grantee, to a use of such mill and mill-site in the winter months only, and not in the summer months; nor was the judgment obtained by the plaintiff against William Lowe, if it was for damages suffered by the plaintiff by Lowe's use of said mill, substantially as used by the defendant in the summer months, conclusive evidence of the defendant's right to use said mill in the summer months, or that such use was un reasonable as affecting the plaintiffs' rights in the brook. That judgment, as evidence considered in and of itself, is evidence that Lowe used his mill wrongfully prior to the action in which that judgment was obtained, to the plaintiffs' injury, and such judgment so considered was equally consistent with Lowe's having a right to use said mill during the summer months; or with his having the right to use said mill during all the months of the year, or with his unreasonable exercise of a right to use his mill either in the summer or winter months. Such judgment may be considered by the jury as evidence, in connection with all the circumstances and considerations which induced the administrator of Lowe's estate to consent to its being entered."

The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

*W. A. Herrick*, for the defendant.

*S. B. Ives, Jr.*, for the plaintiffs.

GRAY, C. J. The rulings and instructions at the trial were sufficiently favorable to the defendant.

1. The owner of a mill on a natural stream, who withholds or lets down the water in excessive quantities, beyond what is incident to the necessary or reasonable use and operation of his mill, is not protected by the mill acts, but is liable to an action

of tort at common law for injuries thereby caused to lands below on the same stream; and the instructions given to the jury did not allow the plaintiff to recover damages on any other ground. *Gile* v. *Stevens*, 13 Gray, 146, 149. *Gould* v. *Boston Duck Co.* 13 Gray, 442. *Thompson* v. *Moore*, 2 Allen, 350. *Brigham* v. *Wheeler*, 12 Allen, 89.

2. The judgment recovered in the former action against Lowe for a similar injury was rightly admitted in evidence. Considered in and of itself, it was, as the jury were instructed, only evidence that Lowe, from whom the defendant derived his title, used his mill wrongfully, to the plaintiffs' injury. The testimony of the plaintiff, that that action was brought for damage suffered after the new wheel was put in, and caused by it, was competent for the purpose of showing that the question actually tried and determined in the former action was the same which was in controversy in this.

3. The evidence of the condition of the plaintiffs' land, before the new mill-wheel was put in, was admissible upon the question of the effect upon the land of the use of this wheel.

*Exceptions overruled.*